STATE of Iowa, Appellee,

v.

James L. KNOX, Appellant.

No. 94–275.

Supreme Court of Iowa.

July 19, 1995.

Rehearing Denied Sept. 15, 1995.

Linda Del Gallo, State Appellate Defender, and John F. Fatino, Asst. State Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Mary Tabor and Charles Thoman, Asst. Attys. Gen., and Lynn K. Fillenwarth, County Atty., for appellee.

LAVORATO, Justice.

A jury convicted the defendant of sexual abuse in the third degree. He appeals, challenging an evidentiary ruling and the sufficiency of the evidence to convict him. The evidentiary ruling involves Iowa's rape shield law. *See* Iowa R.Evid. 412. The defendant sought to introduce evidence that (1) the complainant had chlamydia at the time the defendant allegedly sexually abused her, and (2) the defendant did not have the disease when tested three months later. The district court denied admission of this proffered evidence after a rule 412 hearing. We find no abuse of discretion in the challenged ruling.

Nor do we find that the evidence was insufficient to convict the defendant. We affirm.

## I. *Background Facts.*

The complainant and Kevin Moore met in December 1992. They dated briefly and had an intimate relationship. In January 1993 Moore invited the complainant to a party at his house in Estherville. Amy Thomsen, a friend, drove the complainant to the party.

The complainant consumed alcohol at the party. At some point, she and Thomsen left the party in Thomsen's car. They headed for a Spirit Lake bar.

On the way out of Estherville, the complainant and Thomsen got into an argument about returning to Moore's party. The argument culminated with the complainant getting out of Thomsen's car and attempting to hitchhike back to the party. Within a few minutes, James L. Knox picked the complainant up as she was walking along the highway. The complainant testified that she asked Knox to take her back to Moore's residence. Instead, he drove to a nearby car wash, where he allegedly sexually assaulted her.

## II. *Background Proceedings.*

The State filed a trial information charging Knox with sexual abuse in the third degree. *See* Iowa Code § 709.4(1) (1993). Knox pleaded not guilty and waived his right to speedy trial.

Knox filed a motion for a change of venue which the State resisted. The State filed a motion in limine to invoke our rape shield law. The State filed a second motion in limine to exclude evidence that at the time of the assault, the complainant had chlamydia. These motions were consolidated for a single evidentiary hearing. After the hearing, the court (1) denied Knox's motion for a change of venue, (2) delayed ruling on the State's second motion in limine, and (3) granted Knox a continuance so that he could file a rule 412 motion regarding the chlamydia evidence.

Knox then filed a rule 412 motion on the issue. After the rule 412 hearing, the court ruled that the chlamydia evidence was not admissible.

At trial, Knox made an offer of proof on the chlamydia issue, which the court denied. The court also denied his motion for judgment of acquittal and his motion for mistrial.

The jury convicted Knox of the crime charged. The district court denied Knox's motion for new trial and motion in arrest of judgment. The court sentenced Knox to not more than ten years imprisonment.

It is from the judgment of conviction and sentence that Knox appeals. We recite additional facts as they relate to the issues we discuss.

## III. *The Chlamydia Evidence.*

Iowa Rule of Evidence 412 pertinently provides:

(a) Notwithstanding any other provision of law, in a criminal case in which a person is accused of sexual abuse, *reputation or opinion evidence of the past sexual behavior of an alleged victim of such sexual abuse is not admissible.*

(b) Notwithstanding any other provision of law, in a criminal case in which a person is accused of sexual abuse, *evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is:*

(1) ... *constitutionally required to be admitted;* or

(2) admitted in accordance with subdivision "c" and is evidence of:

(A) past sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury; or

. . . .

(c)(3) *If the court determines on the basis of [a rule 412 hearing] that the evidence which the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence shall be admissible in the trial* to the extent an order made by the court specifies evidence which may be offered and areas with respect to

which the alleged victim may be examined or cross-examined.

(d) For purposes of this rule, the term "past sexual behavior" means sexual behavior other than the sexual behavior with respect to which sexual abuse is alleged.

(Emphasis added.)

As he did in the district court, Knox maintains that the chlamydia evidence was admissible under this statute on three grounds. First, the evidence was exculpatory. Second, the evidence could be used to impeach the credibility of the complainant. Last, the evidence was constitutionally required to be admitted.

■ Our review of the district court's ruling on the chlamydia evidence is for an abuse of discretion. *See Hutchison v. American Family Mut. Ins. Co.*, 514 N.W.2d 882, 885 (Iowa 1994) (generally where assignments of error attack trial court's evidentiary rulings, this court will reverse only upon a showing of abuse of discretion). We find an abuse of discretion only when the district court "exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Peters*, 525 N.W.2d 854, 859 (Iowa 1994) (citation omitted).

A. *The exculpatory ground.* In his rule 412 motion, Knox stated he intended to offer evidence that the complainant had chlamydia at the time of the alleged incident and he did not. The complainant did test positive for chlamydia when she was examined at a hospital shortly after the alleged incident. Knox did not have the disease when he was tested three months later.

The district court concluded this proffered evidence (1) had "very weak" probative value, (2) would violate rule 412 as evidence of a specific instance of past sexual behavior, and (3) did not fit within the exceptions of rule 412(b)(2)(A). The court therefore ruled the proffered evidence was inadmissible.

We need not decide the question whether this proffered evidence of chlamydia falls within the prohibition of the rape shield law. If such evidence was outside the rape shield law, it was admissible or inadmissible on the general grounds of relevancy. *See State v. Alvey*, 458 N.W.2d 850, 852 (Iowa 1990)

(whether victim's past false claims of rape fell within prohibition of rape shield law need not be decided because in either event the question was one of relevancy).

■ Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R.Evid. 401. The test of relevancy is "whether the evidence offered would render the desired inference more probable than it would without such evidence." *Alvey*, 458 N.W.2d at 852 (citation omitted).

The inference Knox would have the jury make is that he did not engage in sexual intercourse with the complainant. To support this inference Knox proffered the chlamydia evidence at the rule 412 hearing.

Because of other evidence, the district court concluded the probative value of this proffered evidence was "very weak." We agree.

■ The other evidence included the following. Chlamydia is caused by a bacterial organism which affects the male and female urogenital tracts. Chlamydia is usually transmitted by sexual intercourse. A male has a thirty percent chance of contracting the disease from an infected female in a single act of intercourse. Use of condoms substantially reduces this risk. In contrast, a female has a seventy percent chance of contracting the disease from an infected male. Had Knox engaged in unprotected sexual intercourse with the complainant, his chances of contracting the disease from the complainant would have been only one out of three.

In addition, the complainant testified that she was penetrated but she was not sure whether she had been penetrated with a penis, a finger, or some other object. She also testified that Knox did not move his body as if he were having sexual intercourse. Nor could she tell whether he reached any kind of climax. Investigators found no seminal fluid or foreign pubic hairs in the complainant's underpants. Had such evidence been found, one could reasonably infer unprotected sexual intercourse. Shortly after

the alleged incident, the police arrested Knox and found condoms in his pocket. All of this evidence suggests that Knox may have used a condom or may have digitally penetrated the complainant. In either of these events, the chances of Knox contracting chlamydia was nil.

■ Finally, there was evidence that chlamydia is easily treatable with widely available antibiotics. This suggests that Knox could have been infected at the time of the alleged incident but was cured when tested three months later.

■ The rape shield law and the general rules of relevancy require a balancing test. The evidence may have some relevancy, yet it may not be admissible if the probative value of such evidence is substantially outweighed by the danger of unfair prejudice. *See* Iowa R.Evid. 403; 412(c)(3). Evidence is unfairly prejudicial if it may cause a jury to base its decision on something other than the established propositions in the case. *State v. Plaster,* 424 N.W.2d 226, 231 (Iowa 1988) (citation omitted). Courts have recognized that the existence of a venereal disease is highly inflammatory. *State v. Ridgeway,* 66 Ohio App.3d 270, 274, 583 N.E.2d 1123, 1125 (1990) (highly inflammatory nature of evidence that victim, but not defendant, had gonorrhea outweighed probative value and was inadmissible under rape shield law); *State v. Ervin,* 723 S.W.2d 412, 415 (Mo.Ct. App.1986) (relevancy of defendant's negative gonorrhea test, taken six weeks after the rape, did not render probative value of evidence greater than prejudicial effect of admission to victim).

■ Although the chlamydia evidence was relevant to a degree, it "does not reach a level of probative force to warrant the inflammatory and prejudicial impacts upon the victim and the proceeding by its admission." *Ervin,* 723 S.W.2d at 415. The district court did not abuse its discretion in denying the admission of the chlamydia evidence. *See People v. Redman,* 135 Ill.App.3d 534, 542, 90 Ill.Dec. 361, 367–68, 481 N.E.2d 1272, 1278–79 (1985) (victim tested positive for oral gonorrhea six days after rape and defendant tested negative for gonorrhea thirty days

after attack; trial court's suppression order upheld because lag time between attack and defendant's test rendered evidence irrelevant); *State v. Carmichael,* 240 Kan. 149, 154, 727 P.2d 918, 924 (1986) (evidence that victim had gonorrhea was no longer relevant where defendant was treated for gonorrhea before any tests were taken to determine whether defendant was infected; evidence could only show that victim had sexual intercourse with someone before rape, which was not permitted under state rape shield law); *Ervin,* 723 S.W.2d at 415 (suppression of evidence that when rape occurred victim had gonorrhea but defendant did not upheld where (1) there was less than a 33⅓% chance defendant would have contracted the disease during unprotected sexual intercourse with the victim, and (2) evidence would have had prejudicial effect); *State v. Jarry,* 161 Vt. 629, 630, 641 A.2d 364, 365–66 (1994) (refusal to allow cross examination of expert witness on source of rape victim's chlamydia upheld where defendant did not test negatively until four months after attack because evidence was intended to prove only whether defendant had had intercourse with victim on date of alleged incident).

B. *The impeachment ground.* Knox believes admission of the chlamydia evidence was crucial to his theory of defense: The complainant had fabricated the story of the abuse to regain the affections of Moore, her former paramour. Moore had broken up with the complainant several days before Knox's alleged sexual abuse of the complainant.

■ Knox's rule 412 motion sets out his impeachment ground this way:

Specifically, the defendant intends to introduce the following:

. . . .

3. Kevin Moore testified that he had sexual intercourse with [the complainant] on numerous occasions both at his home and at [the complainant's] home. (See attached deposition excerpts of Kevin Moore as offer of proof.) Both [the complainant] and Kevin Moore claim that they were only "friends" and were not close. This evidence of the "closeness" of their rela-

tionship is crucial proof of the motive of [complainant] to tell an untruthful story about James L. Knox. She told this story about James L. Knox to get attention from Kevin Moore who had rejected her only [two] or [three] days earlier.

Earlier in his rule 412 motion, Knox stated he intended to offer this chlamydia evidence: The complainant had chlamydia on the date of the alleged incident. At the rule 412 hearing Knox argued tests taken three months later showed he did not have chlamydia. So the chlamydia evidence and the complainant's sexual relations with Moore were an integral part of Knox's impeachment theory.

■ There are three problems with Knox's impeachment theory. First, the theory assumes the complainant lied about contracting the disease from Knox. There was deposition testimony from Thomsen, the complainant's friend, that the complainant had contracted chlamydia approximately two years before the alleged incident but the condition had cleared with medication. There was, however, no testimony that the complainant had the condition or knew she had the condition shortly *before* the alleged sexual abuse. *Cf. State v. Bressman,* 236 Kan. 296, 300, 689 P.2d 901, 906 (1984) (defendant offered evidence of complaining witness's prior history of gonorrhea to challenge her credibility; held that trial court did not abuse its discretion in excluding the testimony as irrelevant because witness never testified her statement to defendant that she had gonorrhea was true; rather the statement was made to stop defendant from going any further; laboratory tests on date of alleged incident showed that complaining witness did not have gonorrhea).

■ Second, the probative value of this testimony was tenuous at best. In addition, the testimony was inflammatory to the complainant, branded her as promiscuous, and related instances of past sexual behavior—the very type of evidence the rape shield law was intended to prevent. The evidence's probative value was clearly outweighed by the unfairly prejudicial effect to the complainant. *See State v. Gettier,* 438 N.W.2d 1, 2–4 (Iowa 1989) (defendant not permitted to

cross-examine complainant on her statement to defense witness after emerging from defendant's van where alleged sexual abuse occurred that she had had sex with two men that day; although evidence had some probative value for impeachment purposes on issue of consent, court concluded probative value was outweighed by unfair prejudice in causing jury to consider complainant a bad person). As we noted in *Gettier,* "[e]vidence of other acts will be excluded if relevant only to show that the individual is a bad person, capable of committing bad acts." *Gettier,* 438 N.W.2d at 4; Iowa R.Evid. 404(b). The impeachment evidence Knox intended to introduce clearly insinuates that the complainant is a bad person and for that reason the evidence is unfairly prejudicial.

Last, ordinarily inquiry into specific instances of conduct is not allowed. *State v. Martin,* 385 N.W.2d 549, 552 (Iowa 1986). Iowa Rule of Evidence 608(b), however, does permit such inquiry "in the discretion of the court" if probative of the witness's truthfulness or untruthfulness. *Id.;* Iowa R.Evid. 608(b). Rule 608(b) follows Federal Rule of Evidence 608(b). *State v. Clark,* 325 N.W.2d 381, 383 (Iowa 1982). The note accompanying the federal rule significantly provides:

> Effective cross-examination demands that some allowance be made for going into matters of this kind, but the *possibilities of abuse are substantial.* Consequently, safeguards are erected in the form of specific requirements that the instances inquired into be probative of truthfulness or its opposite.... Also, *the overriding protection of Rule 403 requires that probative value not be outweighed by danger of unfair prejudice,* confusion of issues, or misleading the jury.

Fed.R.Evid. 608(b) advisory committee note.

We have already mentioned the minimal probative value of the proffered impeachment evidence and its unfairly prejudicial effect on the complainant. Given the specific instances of sexual conduct in the proffered impeachment evidence, we think rule 608(b) likewise supports the district court's decision excluding this evidence.

For all these reasons, we conclude the district court was well within its discretion in excluding this evidence.

C. *The constitutional ground.* Knox finally argues that the court had no discretion to deny admission of this impeachment evidence because it was constitutionally required to be admitted under the rule 412(b)(1) exception. Under the federal Constitution and corresponding state constitutional provisions, Knox maintains suppression denied him his Sixth Amendment rights to (1) present testimony in his own defense, and (2) confront and cross-examine adverse witnesses. Under both constitutions he maintains his Fourteenth Amendment due process right to a fair trial was violated. The State counters that this argument is unpreserved.

Our careful review of the record reveals that at the rule 412 hearing, Knox's counsel raised no constitutional concerns. The court did not consider constitutional arguments in its rule 412 ruling. Knox's counsel did not file any posthearing or posttrial motion calling constitutional arguments to the district court's attention. The court did not address the issue in any posthearing or posttrial motions. So ordinarily there would be nothing left for our review. *See State v. Manna,* 534 N.W.2d 642, 644 (Iowa 1995). However, Knox did raise these constitutional concerns during trial when he made an offer of proof on the chlamydia evidence. So we consider them preserved for our review.

▇▇▇ Nevertheless, we still think the district court did not err on constitutional grounds in refusing to admit the impeachment evidence. This is because no constitutional violation occurs unless the suppressed evidence is relevant to the charge. *State v. Jones,* 490 N.W.2d 787, 791 (Iowa 1992). As we said, the relevance of the impeachment evidence was, at best, tenuous. And any relevance was overshadowed by the unfairly prejudicial effect of admission. *See State v. Clarke,* 343 N.W.2d 158, 161 (Iowa 1984) ("Even relevant evidence is not constitutionally required to be admitted if the prejudicial effect outweighs the probative value.") (citations omitted); *accord Gettier,* 438 N.W.2d at 4. Knox's Sixth and Fourteenth Amendment rights were not implicated by the district court's action in denying admission of this marginally relevant, highly prejudicial evidence.

IV. *Substantial Evidence.*

Knox also contends the State failed to present substantial evidence that he committed the crime charged, characterizing the State's case as "[doing] no more than rais[ing] speculation or suspicion." On this basis he believes a reasonable jury could only have found him not guilty. He presents favorable testimonial excerpts from several witnesses to support this argument. He makes much of two facts: (1) there was no direct physical evidence linking him to the crime, and (2) there was direct evidence establishing that the complainant was not credible.

The State, of course, contends that when the appropriate standards are applied, there is substantial record evidence from which a jury could find that Knox sexually abused the complainant.

▇▇▇ Under a substantial evidence challenge, we view the record evidence in the light most favorable to the State. *State v. Taft,* 506 N.W.2d 757, 762 (Iowa 1993). Evidence is substantial in a criminal case when it could convince a reasonable person that the defendant is guilty beyond a reasonable doubt. *State v. Bush,* 518 N.W.2d 778, 779 (Iowa 1994). We consider all of the evidence presented, not just the evidence supporting the verdict. *State v. Liggins,* 524 N.W.2d 181, 186 (Iowa 1994). If we determine substantial evidence exists to support the jury verdict, we must affirm. If the record does not contain substantial evidence, we must reverse.

A. *Applicable law.* Under the pertinent part of Iowa Code section 709.4(1), a defendant commits third-degree sexual abuse when (1) the defendant performs a sex act, (2) by force or against the will of the victim.

Iowa Code section 702.17 pertinently defines a sex act as

any sexual contact between two or more persons by: penetration of the penis into

the vagina ...[;] contact between the genitalia of one person and the genitalia ... of another person; contact between the finger or hand of one person and the genitalia ... of another person ...; or by use of artificial sexual organs or substitutes therefor in contact with the genitalia....

   B. *The merits.* Before applying the facts to the law, we must dispose of Knox's first argument. We concede that most of the evidence against him is circumstantial. But we have often said that circumstantial and direct evidence are equally probative. This is true whether the case is civil or criminal. *See, e.g., State v. Parrish,* 502 N.W.2d 1, 3 (Iowa 1993) ("Direct and circumstantial evidence are equally probative."); *Randol v. Roe Enters., Inc.,* 524 N.W.2d 414, 417 (Iowa 1994) ("This court has routinely observed that circumstantial evidence often may be equal or superior to direct evidence.").

   The only direct evidence is the complainant's testimony. But under today's law that is sufficient to convict. The law has abandoned any notion that a rape victim's accusation must be corroborated. *See State v. Feddersen,* 230 N.W.2d 510, 514–15 (Iowa 1975); Iowa R.Crim.P. 20(3). So we reject Knox's suggestion that direct physical evidence was a necessary prerequisite to conviction.

   1. *Substantial evidence of a sex act.* The complainant testified that she did not know for sure how the sex act was accomplished. She could only state that "[s]omething went inside me." The physician who treated the complainant immediately after the alleged incident testified that she did a rape examination of the complainant. The physician found erythema (abnormal skin redness) and a small tear in the area of the complainant's vulva. She found additional erythema extending into the vaginal wall. In the physician's opinion, (1) the erythema and tearing were caused by something rubbing or causing a fair amount of friction in that area, (2) the complainant's injuries were consistent with penetration of the vagina by an object the size of a finger or penis, and (3) the erythema indicated that penetration had probably occurred within the last twenty-four

to forty-eight hours. The hospital's sexual assault intake form reveals the complainant told the physician that she had not engaged in consensual sexual intercourse since December 27, several days before the assault. From all of this evidence a reasonable fact finder could conclude that a sex act occurred.

   2. *Substantial evidence that the sex act was by force or against the will of the victim.* The complainant testified that she did not consent to the sex act. At trial she identified Knox as her attacker. She also testified that when Knox pinned her to the passenger seat, she kicked her feet in an attempt to thwart Knox's advances.

   The treating physician testified that the complainant presented bruises on her lower legs. The physician also testified that, while she was not an expert on bruises, she thought these had probably occurred within twenty-four to forty-eight hours of the attack. From this evidence a reasonable fact finder could conclude that the complainant did not consent to the sex act perpetrated upon her.

   3. *Substantial evidence that the complainant was credible.* Knox also suggests that a reasonable jury—giving adequate consideration to his evidence of the complainant's reputation for truth or veracity—would have found Knox not guilty. He argues that the complainant's credibility was impeached due to certain inconsistencies in her testimony. He points specifically to conflicting testimony on the reasons why the complainant (1) left Moore's party, (2) broke up with Moore, (3) ended up hitchhiking, and (4) decided to return to Moore's party in lieu of going to the Spirit Lake bar with Thomsen. We reject Knox's suggestion.

   It is true there was conflicting testimony in the record regarding the complainant's credibility. However, the jury was in the best position to judge whom and what to believe. *See, e.g., State v. Hulbert,* 481 N.W.2d 329, 332 (Iowa 1992) ("Assessment of a witness's credibility is uniquely within a lay jury's common understanding."). And it was for the jury to assign the evidence presented whatever weight it deemed proper. *See, e.g., State v. Simpson,* 528 N.W.2d 627, 632 (Iowa

1995) ("The jury may give to the evidence the weight it should receive.").

We see no indication that the jury abdicated its role here. As already noted, at trial the complainant identified Knox as her attacker. She testified that she did not consent to the sex act perpetrated upon her. The complainant's statements and the circumstantial evidence presented support the jury's verdict.

V. *Disposition.*

The district court did not abuse its discretion in refusing to admit Knox's proffer of chlamydia evidence. This evidence was not admissible for impeachment purposes. Nor was it constitutionally required under any of the exceptions to rule 412.

Substantial record evidence supports the jury's finding beyond a reasonable doubt that Knox committed sexual abuse in the third degree under Iowa Code section 709.4(1).

For all these reasons, we affirm.

**AFFIRMED.**